Ivaylo Dodev, and
Nikolina Dodev,

c/o  38153 West Nina Street
     Maricopa, Arizona 85138
     (480) 457-8888 Phone
     (480) 457-8887 Facsimile
     dodev@hotmail.com

*Pro Se*

FILED / LODGED
RECEIVED / COPY

SEP 0 4 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

**FILE ON DEMAND**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ivaylo Dodev,**<br>**Nikolina Dodev,**<br><br>       **Plaintiffs,**<br><br>**v.**<br><br>**FRONTIER AIRLINES, INC.,**<br>**DOES 1-10,**<br><br>       **Defendant.** | **Case No.** CV-24-2294-PHX-CDB<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      **COMES NOW** Claimants, Ivaylo and Nikolina Dodev, in *pro se*, ("Plaintiffs")

with their Complaint against Frontier Airlines, Inc., Does 1 through 10, ("Defendant")

and alleges as follows:

### I
### INTRODUCTION

     1.     Plaintiffs bring this action against Defendant to remedy violation of Title

VI of the Civil Rights Act of 1964, 42 U.S.C. §1981 *et seq*., 42 U.S.C. §2000(d) as

amended ("Title VI"), Title III of the Americans with Disability Act ("ADA"), 42 U.S.C

§§ 12181, *et seq.*, and breach of contract under Arizona law—amongst other violations—resulting in missing a prepaid vacation, discrimination, defamation, breach of contract, and emotional distress.

## II
## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is pursuant to 28 U.S.C. § 1331 *et seq.*, and Title III of the ADA, 42 U.S.C §§ 12181, *et seq.* In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is pursuant to 28 U.S.C. 1391(b)(2), because the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## III
## PARTIES

4.     Plaintiffs Ivaylo and Nikolina Dodev, husband and wife, are natural-born individuals and, at all times, material hereto are Citizens of Arizona.

5.     All matters material hereto occurred in Maricopa County, State of Arizona.

6.     Defendant, Frontier Airlines, INC., ("Frontier") is a corporation organized under the laws of the State of Colorado.

7.     Frontier's principal place of business is 4545 Airport Way, Denver, Colorado 80239.

8.     Frontier is a low-cost airline among the United States' largest airlines.

9.     DOE 1 through 10 are unknown types of entities and/or employees of Defendant.

- 2 - | Page of Discrimination & Breach of Contract Complaint

# IV
## GENERAL FACTUAL CLAIMS

10.     Plaintiffs, as European immigrants, belong to a small minority of Bulgarian-Americans.

11.     It is incumbent on most European countries to place a big emphasis on round-number and milestone birthdays.

12.     The plaintiffs, filled with anticipation and excitement, had chosen Punta Cana, Dominican Republic, to celebrate Nikolina's 55th milestone birthday. For the occasion, they booked a five-night—six-day all-inclusive resort in Punta Cana.

13.     During the vacation reservation, the Plaintiffs allowed the resort to book airfare to and from the destination.

14.     The entire vacation, including transportation, was prepaid through the resort or the resort booking agency.

15.     The Plaintiffs were unaware that the resort or the resort booking agency would book them to fly with Frontier.

16.     Despite being seasoned world travelers, the Plaintiffs had never flown with Frontier or any other budget airline, a fact that made them feel unfamiliar and potentially vulnerable in this situation in regards to Defendant luggage policy.

17.     On November 5, 2022, Plaintiffs cleared the Sky Harbor International Airport's TSA screening with the lawfully bought airfare and timely obtained boarding passes from the Airline.

18.     Plaintiffs are holders of TSA Precheck, Global Entry, and CLEAR status.

19.     Both Plaintiffs, who underwent a rigorous TSA background check and interview prior to being granted a Global Entry status, have never experienced interference or a skirmish on any airplane or airport around the world during their more than four decades of traveling [flying].

20.     When their boarding zone was called, the Plaintiffs approached the gate [Gate F2] to board the aircraft.

21.     At the gate, they were asked to step aside and pay for their carry-on bags, an oversight on the Plaintiff's side, as they had never before flown with a budget airline.

22.     The Plaintiffs were not the only ones not familiar with the Defendant's carry-on luggage policy; the gate attendants also asked many of the other passengers to step aside and pay for their carry-on luggage.

23.     As the Plaintiff proceeded towards the next counter—where carry-on bag fees were collected—a gate attendant attempted to engage them in conversation. At that time, the Plaintiffs were about 6-8' away from that counter, and the attendant was standing behind a glass divider wearing a face mask.

24.     For the record, there was no mask mandate at any relevant time to this action, but the Plaintiffs respected the gate attendant's choice to wear one.

25.     Ivaylo Dodev ("Ivaylo") could not understand the gate attendant from that distance and, because he could not read her lips through her face mask, replied - "I can't hear you" as he was approaching the gate attendant's counter.

26.     The gate attendant's demeanor turned *pugilistic* at once and asked Ivaylo - "Are you insulting my mask?" [verbatim]. Ivaylo replied with a big smile on his face

– "no, I just can't hear you". (Ivaylo is documented as legally deaf in his left ear.)

27.    Instantaneously, after this brief encounter, the Plaintiffs were asked to step aside from the counter and give the gate attendant 10 minutes before she processed their payment.

28.    At all relevant times, the Plaintiffs remained calm and respectful, were not confrontational, and did not present any threat to the Airline employees or the boarding passengers.

29.    When the Plaintiffs realized there were no more passengers waiting to board the aircraft, they attempted to pay for their carry-on luggage a second time and were again rejected by the same gate attendant: "I am not ready for you yet."

30.    At that moment, the Plaintiffs were subjected to blatant unprofessional conduct as some airline employees were whispering in their ears and abruptly closing the boarding gate in front of them, a clear violation of their rights as passengers.

31.    During the Plaintiffs' last attempt to pay for their luggage and board the aircraft in order to catch their connecting flight to Punta Cana, their vacation destination where they had planned an ostentatious celebration of Nikolina Dodev's ("Nikolina") 55-year birthday, they were told by the same person—after she gazed at the monitor in front of her—to give her another 100 seconds.

32.    At that time, the Plaintiffs called 911 and asked for assistance. The police responded, and from the outset, they explained that this was a civil matter.

33.    From what the Plaintiffs gleaned from the responding officers; the Airline employees could not give any legitimate reason for denying them boarding. The

responding officers informed the Plaintiffs that the plane had taken off and they could do nothing at this point.

34.     At all relevant times, the responding officers did not find the Plaintiffs to be disruptive, disrespectful, disorderly, boisterous, or in any way acrimonious towards the Airline employees or any other passengers.

35.     The police officers even endeavored to help the Plaintiffs book another airfare to reach their vacation destination, but there was not a suitable option in the end.

36.     When they approached the Defendant's booking counter, one of the gate attendants' agents—that Plaintiffs encountered while trying to board the plane—audibly warned the rest of the airline employees not to rebook them, by saying "they are not allowed to fly".

37.     As a result of the Frontier employee's actions and/or omissions, the Plaintiffs lost their one-chance opportunity to celebrate Nikolina's birthday. They suffered humiliation, defamation, and emotionnal distress, along with a significant financial loss.

38.     When Ivaylo understood that the plane had taken off, he attempted to take a picture of the Frontier employee, who was showing plenty of exuberance because she was able to marginalize Plaintiffs from the rest of the passengers and cause them to miss their flight. (He wanted to capture her nametag and have her name for the record.)

39.     After reviewing the picture, Ivaylo realized she had covered her nametag with her cellphone but could not conceal her sanctimonious smile. (*See* the picture below, attached hereto and incorporated herein by this reference.)





## V
### FIRST CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF TITLE VI, *ET SEQ.*, and the ARIZONA CIVIL RIGHTS ACT

40.    Plaintiffs reaffirms and realleges the general factual claims above by this reference.

41.    The plaintiffs are a minority of Bulgarian descent who have retained their foreign accent.

- 7 - | Page of Discrimination & Breach of Contract Complaint

42.     Defendant discriminated against Plaintiffs on the basis of their national origin in violation of Title VI.

43.     At all times relevant to this action, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, has been in full force and effect and has applied to the Defendant's conduct.

44.     At all times relevant to this action, the United States Department of Justice regulations implementing Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and 42 U.S.C. § 1981, *et. seq.* were in full force and effect and applied to the Defendant's conduct.

45.     42 U.S.C. § 1981 guarantees "[a]ll persons ... the same right ... to make and enforce contracts ... to sue, be party, gives evidence." 42 U.S.C. § 1981(a). The Civil Rights Act of 1991 amended § 1981 to protect "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Id. at § 1981(b).

46.     Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits exclusion from participation in, denial of benefits from, and discrimination under federally assisted programs on the grounds of race, color, or national origin.

47.     Plaintiffs, being of Jewish descent, belong to the religious Jewish minority of Arizona.

48.     While attempting to board the plane, Nikolina was wearing faith-based jewelry.

49.     At all times relevant to this action, Arizona Civil Rights Act

- 8 - | Page of Discrimination & Breach of Contract Complaint

("ACRA"), A.R.S. § 41-1442, has been in full force and effect and has applied to the Defendant's conduct.

50.     ACRA, (A.R.S. § 41-1442), prohibits "[d]iscrimination in places of public accommodation against any person because of race, color, religion, sex, national origin or ancestry,"

51.     Based on all of the foregoing claims confirming the Defendant's treatment and interactions with the Plaintiffs, the Defendant discriminated against the Plaintiffs on the basis of their national origin and religion.

52.     Plaintiffs are, therefore, entitled to an award of attorneys' fees, costs, and disbursements pursuant to Title VI and/or common tort law.

## VI
## SECOND CAUSE OF ACTION
## VIOLATION OF AMERICANS WITH DISABILITY ACT

53.     Plaintiffs reaffirms and realleges the general factual claims above by this reference.

54.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, *et. seq.* has been in full force and effect and has applied to Defendant's conduct.

55.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

56.     Ivaylo has been substantially limited in the major life activities of hearing at all times relevant to this action. Accordingly, he is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

57.    At all times relevant to this action, Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

58.    Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

59.    Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); *see also* 28 C.F.R. § 36.202.

60.    Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

61.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(i).

62.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual;

the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

63.     Based on all of the foregoing facts Plaintiffs allege that Defendant's treatment and interactions with them was discriminatory against the individual Plaintiff, Ivaylo, on the basis of his disabilities by: 1) denying Ivaylo an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); 2) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Ivaylo or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); and 3) failing to make reasonable modifications in policies, [train staff and employe] practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A).

64.     Plaintiffs are, therefore, entitled to an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## VII
### THIRD CAUSE OF ACTION
## VIOLATION OF THE ARIZONAN WITH DISABILITY ACT

65.     Plaintiffs reaffirms and realleges the general factual claims above by this reference.

66.     At all times relevant to this action, the Arizonans with Disabilities Act

- 11 - | Page of Discrimination & Breach of Contract Complaint

("AzDA"), A.R.S. § 41-1492, *et. seq.,* has been in full force and effect and has applied to Defendant's conduct.

67.     At all times relevant to this action, Ivaylo had substantial impairment to the major life activities of hearing and is a qualified individual with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

68.     At all times relevant to this action, Defendant's facilities at which Plaintiffs were lawfully admitted were and are places of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

69.     The AzDA, A.R.S. § 41-1492(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

70.     Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures." A.R.S. § 41-1492(G)(3).

71.     As set forth in the foregoing facts about Ivaylo's interactions with Defendant's employees and its agents within the public facilities, Plaintiffs reallege that Defendant specifically discriminated against Ivaylo, by failing to ensure adequate and effective communication when alerted by him and his wife that he could not hear.

72.    Discrimination under the AzDA also includes "[a] failure to make reasonable modifications in policies, practices or procedures, [failure to train their staff and employees] if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492(G)(2).

73.    The Defendant's wanton violation of its obligations and Ivaylo's rights under the AzDA has caused substantial financial damages to his family, intimidation, defamation, and emotional distress.

74.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

75.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

## VIII
## FOURTH CAUSE OF ACTION
## INFLICTION OF EMOTIONAL DISTRESS AND DEFAMATION

76.    Plaintiffs reaffirms and realleges the general factual claims above by this reference.

77.    Plaintiffs are entitled to compensatory damages for the full amount

allowed under Title VI and the Civil Rights Act, ADA and A.R.S for suffering direct and proximate injuries caused by Defendant.

78. The Defendant's actions were recklessly indifferent to the Plaintiffs' federally protected rights; therefore, they are entitled to be made whole for all financial losses and/or any other federal and state law provision.

79. Plaintiffs are entitled to compensatory, punitive, and exemplary damages for undergoing mental and physical distress.

80. The Defendant's conduct towards Ivaylo was extreme and outrageous. The Defendant's failure to accommodate his needs on the basis of his inability to hear was wanton, deliberate, and inexcusable. The Defendant's staff took a great pleasure in marginalizing the Plaintiffs from the rest of the passengers and treating them as second-class citizens.

81. Defendants intended to cause the Plaintiffs emotional distress and humiliation, and defamation by ostracizing and agitating them with comments such as "I'm not ready for you," "Give me 10 more minutes," "I will be ready for you in 100 seconds," and so forth.

82. At no given time did the Plaintiffs show any disrespect to the gate attendants' crew. They remained calm and composed as sheep led to the slaughter until the police officers responded to their call for help.

83. As a result of Defendant's conduct, Plaintiffs suffered intense, severe, and pervasive emotional distress as they had to internalize the whole process of humiliation and defamation.

- 14 - | Page of Discrimination & Breach of Contract Complaint

84.     Plaintiffs, being of Jewish descent, felt uncomfortable—to say the least—and felt extremely defamed when Defendant asked them to step out of the line and were segregated from the rest of the passengers for no legitimate reason.  Including but not limited to some passengers, the Plaintiffs established a friendly encounter prior to boarding.

85.     "[d]efamation claims against airline arising out of actions of gate agent … did not involve airline services, and thus were not preempted by the Airline Deregulation Act" *Doe v. Delta Airlines, Inc., S.D.N.Y.2015, 129 F.Supp.3d 23,* affirmed *672 Fed. Appx. 48, 2016 WL 6989793.*

86.     Plaintiffs pray for judgment as set forth below, as afforded under State, Federal, and tortious laws.

## IX
## FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT

87.     Plaintiffs reaffirms and realleges the general factual claims above by this reference.

88.     Plaintiffs paid and chartered seats with the Defendant's airline carrier, to and from their vacation destination in Dominican Republic.

89.     Plaintiffs entered into a valid and enforceable contract by securing airfare for those flights with Defendant.

90.     The Defendant breached the contract by not allowing the Plaintiffs to board the aircraft. The Airline Deregulation Act does not wholly preempt contract claims. In *American Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995), the Supreme Court

stated, "[w]e do not read the [Airline Deregulation Act]'s preemption clause ... to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at 288; *id.* at 232 ("[T]he [Airline Deregulation Act] permits state-law-based court adjudication of routine breach-of-contract claims ...."). This exception under *Wolens*, however, is narrow and limited to the terms bargained for by the parties. "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. *Wolens* explains that "[t]he [Airline Deregulation Act]'s preemption clause is meant to stop States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232.

91.     Defendant breached the contract by not complying with the Code of Federal Regulations and not providing Plaintiffs with a written statement as codified in 14 CFR § 250.9, reading in pertinent parts:

> ***Written explanation of denied boarding compensation and boarding priorities, and verbal notification of denied boarding compensation.***
> (a)  Every carrier shall furnish passengers who are denied boarding involuntarily from flights on which they hold confirmed reserved space immediately after the denied boarding occurs, a written statement explaining the terms, conditions, and limitations of denied boarding compensation, and describing the carriers' boarding priority rules and criteria.
> (c)  In addition to furnishing passengers with the carrier's written statement as specified in paragraphs (a) and (b) of this section, if the carrier orally advises

*involuntarily bumped passengers that they are entitled to receive free or discounted transportation as denied boarding compensation, the carrier must also orally advise the passengers of any material restrictions or conditions applicable to the free or discounted transportation and that they are entitled to choose a check instead (or cash if that option is offered by the carrier).*

92.     Defendant breached the contract by not having authority to deplane Plaintiffs; The decision to remove a passenger from an aircraft is made by the captain. *See* 14 C.F.R. § 91.3(a) ("The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.")

93.     Because of the Defendant's breach, the Plaintiffs were denied the right to flight to and from the destination they paid for and suffered irreparable emotional damages. These damages are irreparable because a person has an opportunity to celebrate a milestone birthday at 55 years old only once in a lifetime.

94.     Defendant beached the contract because they did not provide a refund to Plaintiffs.

95.     Plaintiffs pray for judgment as set forth below, as afforded under State, Federal, and common law.

## X
### SIXTH CAUSE OF ACTION
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

96.     Plaintiff reaffirms and realleges the general factual claims above by this reference.

97.     Every contract in Arizona contains an implied covenant of good faith and fair dealing, which prevents a party from taking action to unfairly interfere with the right of another to receive the benefits of the contract.

98.    Plaintiffs entered into a valid, enforceable contract upon purchasing airfare from Defendant.

99.    The Plaintiffs diligently fulfilled all their obligations under the contract, including but not limited to complying with TSA regulations and arriving at the gate on time for boarding.

100.    Defendant wantonly and perniciously interfered with Plaintiffs' right to receive the benefits of the contract when it (i) did not allow them to board the aircraft; (ii) failed to provide reasonable accommodations to Ivaylo after being put on notice that he cannot hear the boarding agent; (iii) acted maliciously by demanding Plaintiffs to wait until the aircraft takes off; and (iv) acting in bad faith and sanctimoniously while denying Plaintiffs opportunity to enforce their end of the contract.

101.    The Defendant's breach of contract came on the hills as a direct result of their actions and omissions.

102.    Plaintiffs pray for judgment as set forth below, as afforded under State, Federal and common law.

## XI
## CONCLUSION

103.    In the  name of judicial efficiency, (prior to commencing this action) the Plaintiffs herein have sent a document to the Defendant titled Notice of Claim and Notice to Sue. Said document was sent via certified mail on November 8, 2022. (*See* Exhibit A, attached hereto and incorporated herein.)

104.    In the aforementioned document, Plaintiffs put the hereby Defendant on

notice that they will move the court, during … judicial process, to follow the directives of the Tickets Act - S.947 — 115th Congress (2017-2018), (the act was introduced to the senate in order to cartel the frivolous denying of boarding to passengers and is now referred to the Committee on Commerce, Science, and Transportation) reading in pertinent part:

> ***This bill prohibits an air carrier from denying the boarding of a flight by a passenger who has been cleared to board, without the passenger's consent, unless such passenger presents a safety, security, or health risk.***
>
> *The Department of Transportation (DOT) shall revise federal regulations relating to oversold flights:*
>
> - *to eliminate specified dollar amount limits on compensation provided to a passenger denied boarding involuntarily, and*
> - *to determine whether limits on the number of seats oversold for a flight are necessary and, if so, to consider whether to impose such limits based on a percentage of seats available on the aircraft.*

105.    Upon not receiving a response from the Defendant, the Plaintiffs sent a second document titled Notice of Default and Opportunity to Cure. Said documents were sent via certified mail on February 13, 2023. (*See* Exhibit B, attached hereto and incorporated herein.)

106.    The Defendant replied to the second document, denied the factual claims alleged herein, and refused to settle for its wrongdoings toward the Plaintiffs.

107.    Therefore, the Plaintiffs invoke this court's jurisdiction as the action is ripe for prosecution.

108.    Further, the Plaintiffs ask this honorable court to scrutinize the complaint and *sua sponte* grand any other relief not yet sought and/or not properly plead based on the facts stated therein.

109.   Moreover, A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, ... a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curium).

110.   "[An] Airline ticket holder, who was proceeding *pro se*, would be allowed to amend her amended complaint to add claims for personal injury and negligence, in action arising out of airline's refusal to allow her to board airplane; claims were not futile, on grounds they were preempted by Airline Deregulation Act, as neither proposed claims nor their remedies would significantly impact federal aviation regulation, and airline did not argue it would suffer undue prejudice from the amendment." *Schoene v. Spirit Airlines, Inc., D.Or.2024, 2024 WL 1329056.*

## XII
## PRAY FOR RELIEF

1.   **WHEREFORE**, Plaintiffs prays this Court will enter judgment against Defendant and Unknown Defendants, and each of them, as follows:

a.   Declare Defendant's conduct complaint off herein in violation of Title VI;

b.  Declare Defendant's conduct complaint off herein in violation of ADA;

c.  *Declare Defendant's conduct complaint off herein in violation of AzDA;*

d.  Declare Defendant's conduct complaint off herein in violation of 14 CFR § 250.9

e.  Declare Defendant's conduct complaint off herein in violation of A.R.S. § 41-1442

f.  Declare Defendant's conduct complaint off herein in breach of statutory and common law contractual doctrines and laws;

g.  Award Plaintiff actual and compensatory damages, to be determined by the Jury at the time of trial;

h.  Award Plaintiff punitive damages, to be determined by the Jury at the time of trial;

i.  For costs of suit incurred herein;

j.  For prejudgment and post-judgment interest as available by law; and

k.  For such other and further relief as is just, proper and equitable.

## XIII
## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial each cause of action so triable.


**RESPECTFULLY SUBMITTED** this 4th day of September, 2024

**Ivaylo Dodev,** *Pro Se* **Plaintiff**
**c/o 38153 West Nina Street**
**Maricopa, Arizona 85138**
**(480) 457-8888 Phone**
**(480) 457-8887 Facsimile**

**Nikolina Dodev,** *Pro Se* **Plaintiff**
**c/o 38153 West Nina Street**
**Maricopa, Arizona 85138**
**(480) 457-8888 Phone**
**(480) 457-8887 Facsimile**

## VERIFICATION

We, the undersigned, attest and declare that we are the Plaintiffs in the foregoing document entitled **COMPLAINT.**

We have read and know the contents thereof and certify that the matters stated therein are facts of our own knowledge, except as to those matters, which are therein stated upon our information or belief, and as to those matters, we believe them to be correct.

We declare under the penalty of perjury of the Laws of Arizona that the foregoing is correct and complete to the best of our knowledge, information, and belief, and that this verification is executed in Pinal County, Arizona and is dated this 4th day of September, 2024.

**Ivaylo Dodev**, *Pro Se* Plaintiffs
c/o 38153 West Nina Street
Maricopa, Arizona 85138
(480) 457-8888 Phone
(480) 457-8887 Facsimile

**Nikolina Dodev**, *Pro Se* Plaintiffs
c/o 38153 West Nina Street
Maricopa, Arizona 85138
(480) 457-8888 Phone
(480) 457-8887 Facsimile

# EXHIBIT A

USPS certified mail: *7022 1670 00012644 9807*

Ivaylo Dodev
38153 W Nina St
Maricopa, AZ 85138
(480) 457-8888 Ph.
(480) 457-8887 Fax

## NOTICE OF CLAIM
## NOTICE TO SUE

TO:   **FRONTIER AIRLINES, INC.**
**A corporation organized under the laws of the State of Colorado with a principal place of business at 4545 Airport Way, Denver, Colorado 80239.**

**Served via USPS certified mail though their registered agent:**
**CORPORATION SERVICE COMPANY**
**1900 W. Littleton Boulevard, Littleton, CO 80120** *& Faxed to 425-258-9379 on 1/17/23*

RE:   **Involuntary denying of boarding Flight 1286, departing at 9:53 PM, on Nov. 5, 2022, from PHX Sky Harbor International Airport with final destination Punta Cana, Dominican Republic. Passengers' Confirmation Code: JC9ZWJ.**

You are hereby in receipt of a Notice of Claim/Notice to Sue ("Legal Notice"), regarding the above referenced incident (the "Incident") that took place on the above referenced place, date, and time.  Please take notice that this Legal Notice filed by Ivaylo Dodev and his spouse Nikolina Dodev (the "Claimants") against Frontier Airlines, Inc., and their employees, subsidiaries and attorneys, (the "Airline") may and will be entered as evidence against the Airline in a court of competent jurisdiction when a lawful action is brought against the Airline, if the sought hereinafter good faith resolution is not reached.

### PERTINENT FACTUAL BACKGROUND

1.  On November 5, 2022, the Claimants cleared the airport's TSA screening with their lawfully bought airfare, and timely obtained boarding passes, from the Airline.
2.  Both Claimants are experienced world travelers and holders of TSA Precheck status, Global Entry status, and CLEAR status.
3.  When their boarding zone was called, the Claimants approached the gate [Gate F2] in order to board the aircraft.
4.  At the gate, they were asked to step aside and pay for their carry-on bags.
5.  The Claimants proceeded towards the next counter, where carry-on bag fees were collected, and a gate attendant attempted to engage in conversation with them. At that time Claimants were about 6-8 feet away from that counter and the attendant was *behind a glass divider and wearing a face mask.*

6. Ivaylo Dodev, replied - "I can't hear you" as he approached the attendant's counter with a smile on his face, and Nikolina Dodev noted that they both could not hear what the attendant was saying and suggested/gestured that she speaks up or remove her mask if possible so that they could hear what she is saying. The attendant's demeanor turned hostile at once and she asked Claimants - "Are you insulting my mask?". Ivaylo Dodev replied - "no, I just can't hear you". [Ivaylo Dodev is documented as legally deaf in his left ear, by his ENT doctor.]

7. Instantaneously, after this brief encounter, the Claimants were asked to step aside from the counter and give the attendant 10 minutes before she processes their payment.

8. At all relevant times, the Claimants remained calm and respectful. They were not confrontational and did not present any threat to any of the Airline employees.

9. When the Claimants realized there were no more passengers waiting to board the aircraft, they attempted to pay for their carry-on luggage a second time and were met with the same response, by the same gate attendant: "I am not ready for you yet".

10. At that time some of the Airline employees were whispering in each other's ears and closed the boarding gate in front of the Claimants.

11. During Claimants' last attempt to pay for their luggage and board the aircraft, in order to catch their connecting flight to Punta Cana, their vacation destination where they had planned a celebration of Nikolina's 55-year birthday, they were told by the same attendant—after she gazed at the monitor in front of her—to give her another 100 seconds.

12. At that time the Claimants called over the police and asked for assistance. The police responded and from the outset, they explained that this is a civil matter.

13. From what Claimants were able to glean from the responding officers, the Airline employees were not able to give any legitimate reason for denying Claimants boarding. The responding officers informed Claimants that the plane has taken off and there is nothing they can do at this point.

14. The responding officers did not find the Claimants to be disruptive, disrespectful, disorderly, or in any way threatening towards the Airline employees.

15. The police officers even endeavored to help the Claimants book another airfare in order to reach their vacation destination but in end there was not a suitable option.

16. At no point did the attendants and Airline employees who were present and denied Claimants entry explain to Claimants why they were denied boarding.


## CLAIMANTS ALLEGE

1. The Airline did not comply with the Code of Federal Regulations, as codified in 14 CFR § 250.9, reading in pertinent parts:
   *Written explanation of denied boarding compensation and boarding priorities, and verbal notification of denied boarding compensation.*

*(a) Every carrier shall furnish passengers who are denied boarding involuntarily from flights on which they hold confirmed reserved space immediately after the denied boarding occurs, a written statement explaining the terms, conditions, and limitations of denied boarding compensation, and describing the carriers' boarding priority rules and criteria.*

*(c) In addition to furnishing passengers with the carrier's written statement as specified in paragraphs (a) and (b) of this section, if the carrier orally advises involuntarily bumped passengers that they are entitled to receive free or discounted transportation as denied boarding compensation, the carrier must also orally advise the passengers of any material restrictions or conditions applicable to the free or discounted transportation and that they are entitled to choose a check instead (or cash if that option is offered by the carrier).*

2. Moreover, the Airline employees refused to identify themselves. Upon the involuntary denial of boarding, the Claimants attempted to take a picture of the name badge of the employee who made Claimants wait to board and did not allow them to pay for their carry-on luggage, but were unsuccessful as the attendant concealed her badge. Please see the attached hereto and incorporated herein picture exhibit.

3. Breach of Contract. The Airline entered into a contract with the Claimants to provide services in the form of flights in exchange for payment in US currency and did not meet their obligations.

4. The Airline's employees, wantonly and collectively engaged in race, religious, national origin, and/or physical disability discrimination against the Claimants. Claimants, both white and of Jewish descent, observed the gate attendants' unconstrained, sanctimonious satisfaction by the fact that they were able to single them out from the rest of the passengers and humiliate them. Ivaylo Dodev also made it clear that he could not hear what the attendant was saying due to his hearing disability and was immediately met with hostility and told to step aside. Without conducting discovery under the FRCP Claimants cannot legally determine why they were subjected to ridicule by the Airline during the aforementioned Incident.

## PRAYER FOR RELIEF

1. Claimants incorporate and reallege each preceding paragraph as though fully set forth herein.

2. Claimants will move a court of competent jurisdiction, in jury trial proceedings, to grant them relief and enter a judgment against the Airline for violating federal laws during the Incident.

3. Claimants will move the court for relief against the Airline for civil violations under the Civil Rights Act of 1964.

4. If Claimants find enough evidence, during discoveries and depositions, that the Airline has engaged in repetitious violations of Federal Laws, warranting a

certification FRCP23(C)(1), the Claimants will move the court for class action against the Airline.

5. Claimants will move the court, during said judicial proceedings, to follow the directives of the Tickets Act - S.947 — 115th Congress (2017-2018), reading in pertinent part:

> *This bill prohibits an air carrier from denying the boarding of a flight by a passenger who has been cleared to board, without the passenger's consent, unless such passenger presents a safety, security, or health risk.*
>
> *The Department of Transportation (DOT) shall revise federal regulations relating to oversold flights:*
>
> - *to eliminate specified dollar amount limits on compensation provided to a passenger denied boarding involuntarily, and*
> - *to determine whether limits on the number of seats oversold for a flight are necessary and, if so, to consider whether to impose such limits based on a percentage of seats available on the aircraft.*

6. Claimants will move the court for punitive damages.
7. Claimants will move the court for statutory damages and cost.

## OFFER IN LIEU OF LAWFUL LEAGL ACTION

In the name of the judicial economy, the Claimants served this Legal Notice as a good faith attempt to resolve these allegations and save the time and cost of litigation. By your tendering the sum of $20,000 (twenty thousand dollars), the Claimants will waive all right to suit against the Airline under those claims and sign a settlement and non-disparagement agreement with the Airline, including but not limiting to barring them from participation in any class action against the Airline under the same claims. Please take further notice that if the Airline does not tender payment within 30 days of receipt of this Legal Notice, a timely action will be filed in a court of competent jurisdiction.

**TIME IS OF THE ESSENCE.**

Dated: **November 9, 2022**

Respectfully,

By: _Ivaylo Dodev_ (signature)

Ivaylo Dodev

Picture Exhibit to Legal Notice



# USPS Tracking®

FAQs >

**Tracking Number:**

Remove ✕

70221670000126449807

Copy        Add to Informed Delivery
(https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 1:17 pm on November 21, 2022 in LITTLETON, CO 80120.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered

**Delivered, Left with Individual**

LITTLETON, CO 80120
November 21, 2022, 1:17 pm

**Departed USPS Regional Facility**

DENVER CO DISTRIBUTION CENTER
November 20, 2022, 11:28 pm

**In Transit to Next Facility**

November 20, 2022

**Arrived at USPS Regional Facility**

DENVER CO DISTRIBUTION CENTER
November 12, 2022, 4:07 am

**Departed USPS Regional Origin Facility**

PHOENIX AZ DISTRIBUTION CENTER ANNEX
November 10, 2022, 7:43 pm

# EXHIBIT B

USPS certified mail: 7022 2410 0002 0273 9188

Ivaylo & Nikolina Dodev
38153 W Nina St
Maricopa, AZ 85138
(480) 457-8888 Ph.
(480) 457-8887 Fax

## NOTICE OF DEFAULT AND OPPORTUNITY TO CURE

**TO:** **FRONTIER AIRLINES, INC.**
**A corporation organized under the laws of the State of Colorado with a principal place of business at 4545 Airport Way, Denver, Colorado 80239.**

**Served via USPS certified mail though their Arizona registered agent:**
**THE PRENTICE-HALL CORPORATION**
**8825 N 23rd Avenue, Suite 100**
**Phoenix, Arizona 85021**

**RE:** **Involuntary denying of boarding Flight 1286, departing at 9:53 PM, on Nov. 5, 2022, from PHX Sky Harbor International Airport with final destination Punta Cana, Dominican Republic. Passengers' Confirmation Code: JC9ZWJ.**

You are hereby in receipt of a Notice of Default and Opportunity to Cure ("Notice of Default") regarding the above-referenced incident that occurred on the above-referenced place, date, and time. Please take notice that this Notice of Default filed by Ivaylo Dodev and his spouse Nikolina Dodev (the "Claimants") against Frontier Airlines, Inc., and their employees, subsidiaries, and attorneys (the "Airline") will be entered as evidence against the Airline in a court of competent jurisdiction when a lawful action is brought against the Airline, if the sought hereinafter good faith resolution is not reached.

Please take further notice that on or about November 21, 2022, you were served with the attached hereto and incorporated herein, Notice to Sue, via Airline's registered corporate agent, CORPORATION SERVICE COMPANY, 1900 W. Littleton Boulevard, Littleton, CO 80120. On or about January 17, 2023, the same notice was faxed to the Airline legal department's fax number (425) 258-9379. Due to the Airline's failure to respond to the said legal notice, you are hereby served with this final Notice of Default before the commencement of legal action in the United States District Court for the District of Arizona.

### OFFER IN LIEU OF LAWFUL LEGAL ACTION

In the name of the judicial economy, the Claimants served this Notice of Default as a good faith attempt to resolve the allegations stated more clearly in the Notice to Sue and save the time and cost of litigation. By your tendering the sum of $20,000 (twenty thousand dollars), the Claimants will waive all rights to suit against the Airline under those claims and sign a settlement

and non-disparagement agreement with the Airline, including but not limited to barring them from participation in any class action against the Airline under the same claims. Please take further notice that if the Airline does not tender payment within 30 days of receipt of this Legal Notice, timely action will commence against the Airline. There will be no further correspondence between the Claimants and the Airline other than the legal service of process and the United States District Court for the District of Arizona docket.

**TIME IS OF THE ESSENCE.**

Dated:  **February 13, 2023**

Respectfully,

By: _Ivaylo Dodev_ (signature)
   Ivaylo Dodev

Page 2 of 2

# USPS Tracking®

FAQs >

**Tracking Number:**

Remove X

## 70222410000202739188

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:02 am on February 16, 2023 in PHOENIX, AZ 85021.

Get More Out of USPS Tracking:
**USPS Tracking Plus®**

**Delivered**
**Delivered, Front Desk/Reception/Mail Room**
PHOENIX, AZ 85021
February 16, 2023, 10:02 am

**Out for Delivery**
PHOENIX, AZ 85021
February 16, 2023, 7:27 am

**Arrived at Post Office**
PHOENIX, AZ 85021
February 16, 2023, 7:16 am

**Departed USPS Regional Facility**
PHOENIX AZ DISTRIBUTION CENTER
February 15, 2023, 10:00 pm

**In Transit to Next Facility**
February 15, 2023

**Arrived at USPS Regional Facility**
PHOENIX AZ DISTRIBUTION CENTER
February 14, 2023, 9:17 pm

**USPS in possession of item**
MARICOPA, AZ 85138
February 13, 2023, 3:37 pm

**Hide Tracking History**



Feedback